[Crim. No. 14877. Third Dist., Jan. 26, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
MARK ANTHONY MARTINEZ et al., Defendants and Respondents.

COUNSEL

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Appellant.

Linda Stoick, under appointment by the Court of Appeal, for Defendants and Respondents.

OPINION

PUGLIA, P. J.—An information charged defendants in count I with violation of Welfare and Institutions Code section 1768.7, escape from a California Youth Authority institution, "to wit, Pine Grove Youth Authority." Count II charged defendants with violation of Penal Code section 4530, "escape . . . while at work outside and away from the Pine Grove Youth Authority prison and while under the custody of prison officials, officers and employees." Defendants moved to set aside the information on the ground the charged statutory provisions did not apply to them. (Pen. Code, § 995.) At the hearing, the People conceded that Penal Code section 4530 "does not apply," to defendants. The court dismissed count II at the People's request. Thereafter the court granted defendants' motion and dismissed count I. From the latter order of dismissal, the People appeal (Pen. Code, § 1238, subd. (a)(1)). We shall affirm.

Defendant Martinez was convicted of receiving stolen property (Pen. Code, § 496, subd. 1) and defendant Steinmetz was convicted of robbery and burglary in separate proceedings antedating this prosecution. (Pen. Code, §§ 211, 459.) Each defendant was sentenced to state prison but was ordered to be transferred from there to a California Youth Authority (CYA) institution pursuant to Welfare and Institutions Code section 1731.5, subdivision (c) (all further references to sections of an unspecified code are to the Welfare and Institutions Code). Evidence at the preliminary hearing showed that on July 23, 1985, while confined under those sentences at the Pine Grove Youth Conservation camp, a CYA institution in Amador County, defendants absconded from a worksite at the Amador County Fairgrounds.

Arrested and charged, defendants were held to answer for violating section 1768.7 and Penal Code section 4530. An information charging these violations was filed.

In the trial court, defendants argued that section 1768.7 did not apply to persons in their status. At the time of the alleged escape, section 1768.7,

subdivision (a), provided in pertinent part: "Any person *committed to the authority* who escapes or attempts to escape from the institution or facility in which he is confined, who escapes or attempts to escape while being conveyed to or from such institution or facility, [or] who escapes or attempts to escape while outside or away from such institution or facility under custody of Youth Authority officials, officers, or employees . . . is guilty of a felony." (Stats. 1982, ch. 1104, § 4, italics added.)

Defendants were in CYA custody pursuant to section 1731.5, subdivision (c), which provides in pertinent part: "Any person under the age of 21 years *who is not committed to the authority* pursuant to this section may be transferred to the authority by the Director of Corrections with the approval of the Director of the Youth Authority. In sentencing a person under the age of 21 years, the court may order that the person shall be transferred to the custody of the Youth Authority pursuant to this subdivision . . . *The transfer shall be solely for the purposes of housing the inmate and allowing participation in the programs available at the institution by the inmate, who, in all other aspects shall be deemed to be committed to the Department of Corrections* and shall remain subject to the jurisdiction of the Director of Corrections and the Board of Prison Terms. . . . [¶] The Director of the Youth Authority shall have the same powers with respect to an inmate transferred pursuant to this subdivision as if the inmate had been committed or transferred to the Youth Authority either under the provisions of the . . . Juvenile Court Law or subdivision (a)." (Italics added.)[1]

The trial court ruled that defendants were committed to the Department of Corrections and merely housed at the CYA; therefore former section 1768.7 did not apply.

On appeal the People contend that the phrase "committed to the authority" as used in former section 1768.7 includes individuals transferred from the Department of Corrections to the custody of the CYA under section 1731.5, subdivision (c).

---

[1]Subdivision (a) of section 1731.5 provides the authority under which a criminal court may commit a youthful offender to the CYA. It states: "(a) After certification to the Governor as provided in this article, a court may commit to the authority any person convicted of a public offense who comes within paragraphs (1), (2), and (3), or paragraphs (1), (2), and (4), below: [¶] (1) Is found to be less than 21 years of age at the time of apprehension. [¶] (2) Is not convicted of first degree murder, committed when that person was 18 years of age or older, or sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment. [¶] (3) Is not granted probation. [¶] (4) Was granted probation and probation is revoked and terminated."

██ The fundamental principle of statutory interpretation is to ascertain the legislative intent in order to effectuate the purpose of the law. (*People v. Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288]; *People* ex rel. *Younger v. Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) The statute should be construed with reference to the entire statutory system of which it forms a part so that harmony may be achieved among the various provisions. (*Younger, supra,* 16 Cal.3d at p. 40.) In determining intent, we first look to the words used. (*Overstreet, supra,* 42 Cal.3d at p. 895; *Younger, supra,* 16 Cal.3d at p. 43.) When the language is clear and unambiguous, there is no need for construction, and we may not indulge in it. (*Overstreet, supra,* 42 Cal.3d at p. 895; *People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)

Former section 1768.7 expressly applies to individuals "committed to the [CYA]." (Stats. 1982, ch. 1104, § 4.) Subdivision (c) of section 1731.5 expressly states that any person under the age of 21 "who is not committed to the [CYA]" may be transferred or ordered by the sentencing court to be transferred to the CYA from the Department of Corrections *solely* for *housing* and *participation* in available programs, but in "*all other aspects shall be deemed to be committed to the Department of Corrections.*" (§ 1731.5, subd. (c); italics added.)[2] In our view, the proviso that such transferees are deemed committed to the Department of Corrections for all purposes other than housing and participation in CYA programs forecloses a construction of former section 1768.7 which would include such transferees among those "committed to the authority" for purposes of that section condemning escape from a CYA institution. The statutory language is clear and unambiguous and accordingly there is no warrant for interpretation. (*Overstreet, supra,* 42 Cal.3d at pp. 895-896; cf. *In re Haines* (1925) 195 Cal. 605, 621 [234 P. 883]; *People* v. *Armstrong* (1961) 188 Cal.App.2d 745, 748-749 [10 Cal.Rptr. 618].)

After defendants' escape, section 1768.7 was amended to add a new subdivision which provides in pertinent part: "(c) For purposes of this section, 'committed to the authority' means . . . a transfer to the custody of the Youth Authority pursuant to subdivision (c) of Section 1731.5." (Stats. 1985, ch. 1283, § 2.) The Attorney General argues that this amendment simply clarified then existing law and is therefore persuasive as to the legislative intent underlying former section 1768.7.

---

[2]For example, an individual transferred to the CYA under this subsection remains eligible to receive conduct credits, a benefit not available to those committed to the CYA. (*People* v. *Austin* (1981) 30 Cal.3d 155, 161 [178 Cal.Rptr. 312, 636 P.2d 1]; *In re Ricky H.* (1981) 30 Cal.3d 176, 185-190 [178 Cal.Rptr. 324, 636 P.2d 13].)

■ Generally, a change in statutory language indicates a legislative intent to change the former law (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666, fn. 6 [150 Cal.Rptr. 250, 586 P.2d 564]; *Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289]). However, a legislative declaration of the intent of an earlier act is some evidence of that intent and a factor which we may consider in the process of statutory construction, but it is not binding on us. (*Eu* v. *Chacon, supra,* 16 Cal.3d at p. 470; *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1137 [203 Cal.Rptr. 886].) A later session of the Legislature has no power conclusively to interpret the acts of a previous session. ■ Here, the decisive factor governing our consideration is the plain, unambiguous language of former section 1768.7, which, when read together with section 1731.5, subdivision (c), is not reasonably susceptible to the interpretation urged by the Attorney General. Contrary to that interpretation, the 1985 amendment worked a change in then existing law.[3] (See *Judson Steel, supra,* 22 Cal.3d at p. 666.) ■ The Legislature may not retroactively affect past conduct by revising the operation of an existing law in the form of an amendatory statute. (*Honey Springs Homeowners Assn.* v. *Board of Supervisors, supra,* 157 Cal.App.3d at p. 1137; *County of Sacramento* v. *State of California* (1982) 134 Cal.App.3d 428, 433-434, fn. 5 [184 Cal.Rptr. 648]; *People* v. *Savala* (1981) 116 Cal.App.3d 41, 57 [171 Cal.Rptr. 882]; 2A Sutherland, Statutory Construction (4th ed.' 1984 rev.) § 49.11, pp. 414-415.)

*People* v. *Temple* (1962) 203 Cal.App.2d 654 [21 Cal.Rptr. 633], relied upon by the Attorney General, is inapposite. In *Temple,* the defendant had been committed to the CYA and, pursuant to section 1755.5, transferred to a state prison from which he escaped. The appellate court held defendant amenable to conviction under Penal Code section 4530 because section 1755.5 expressly provides that part 3 of the Penal Code, in which section 4530 appears, is applicable to transferees thereunder (pp. 657-658), and alternatively because defendant was a "prisoner confined in a state prison" within the literal language of Penal Code section 4530 (p. 658; see also *People* v. *Cox* (1962) 206 Cal.App.2d 446, 447 [23 Cal.Rptr. 756]). As we have explained, in this case defendants' status did not fall within the literal

---

[3]This much was implicitly acknowledged in the Legislative Counsel's Digest of Assembly Bill No. 1533, the amending bill, which states in part: "The bill also would define 'committed to the authority' for the purposes of existing law which provides that escapes or attempted escapes by persons committed to the Youth Authority from Youth Authority facilities, during conveyance to and from a Youth Authority facility, or from the custody of designated Youth Authority officials, or a failure to return to such a Youth Authority institution or facility, as specified, is punishable as a felony or as either a felony or a misdemeanor. *Because it would expand the categories of persons to whom the existing law is applicable, it would establish a state-mandated local program.*" (Italics added; Stats. 1985, ch. 1283, § 2.)

language of former section 1768.7 nor did the Legislature move to bring it within that section until after the event at issue.

The Attorney General argues that the construction of section 1767.8 which we adopt will lead to an "absurd result" because "persons committed to state prison but housed in the Youth Authority can escape lawful custody with impunity." Even if that be true, it is a matter for the Legislature, not the courts, to correct. Presumably that was the purpose of the 1985 amendment to section 1768.7. ■ With timeless prescience, this court over 60 years ago articulated a principle which we find equally applicable today: " . . . the crime of escaping or attempting to escape is purely statutory, and in the absence of a statute authorizing punishment for such act by any prisoner . . . there would be no legal authorization for maintaining a prosecution against a prisoner for such conduct." (*In re Haines* (1924) 68 Cal.App. 522, 528 [229 P. 984].)

The judgment is affirmed.

Carr, J., and Smith, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.