[No. G010915. Fourth Dist., Div. Three. Jan. 27, 1992.]

In re THANH Q., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
THANH Q., Defendant and Appellant.

## COUNSEL

Carmela F. Simoncini, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley and Patti W. Ranger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—An amended petition filed on January 14, 1991, alleged Thanh Q. had violated Welfare and Institutions Code section 871, escape from a county juvenile facility.[1] At the jurisdictional hearing, the court found the allegations true and subsequently committed him to the California Youth Authority.

## I

On February 27, 1990, Thanh was committed to Los Pinos Conservation Camp, an Orange County juvenile facility, for 365 days.[2] A furlough was arranged to allow Thanh to go home for an overnight visit beginning December 29, 1990. Thanh agreed not to leave his house unless with his mother and to be picked up at 6:30 p.m. on the 30th. When Thanh failed to appear at the designated meeting point, a probation officer called Thanh's house. She was told that Thanh had not been seen since leaving for the pickup site. He was subsequently apprehended, on January 2, 1991, while riding in a car with other minors.

## II

 Thanh's sole contention is that because he did not escape from a county institution, he did not violate section 871.[3] He argues the trial court erred in concluding he was in the constructive custody of Los Pinos Conservation Camp.

We begin our analysis by noting "[t]he crime of escape as defined in section 871 is entirely statutory and . . . that section must be strictly construed. [Citation.]" (*In re Steven E.* (1991) 229 Cal.App.3d 1162, 1166 [280 Cal.Rptr. 540].)

The plain language of section 871 does not include escapes while on home furloughs from county juvenile facilities. In contrast, section 1768.7, subdivision (a), which relates to escapes from the Youth Authority, expressly

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]Thanh's experiences with the juvenile court system began in 1988. His commitments were punctuated by frequent escape episodes.

[3]Section 871, subdivision (a) provides: "Any person under the custody of a probation officer or any peace officer in a county juvenile hall, or committed to a county juvenile home, ranch, camp, or forestry camp, or any person being transported to or from a county juvenile hall, home, ranch, camp, or forestry camp, who escapes or attempts to escape from that place . . . is guilty of a misdemeanor, punishable by imprisonment in the county jail not exceeding one year."

covers failures to return to that facility while on furlough.[4] The Penal Code has a similar provision for adult offenders.[5] ■ " ' " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " ' [Citations.]" (*Williams* v. *County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1332 [275 Cal.Rptr. 302].) We must assume the Legislature was aware of the other escape statutes which specifically provide for escape while on, or returning from, furlough.

■ "Both the Legislature and the electorate by the initiative process are deemed to be aware of laws in effect at the time they enact new laws and are conclusively presumed to have enacted the laws in light of existing laws having direct bearing upon them. [Citations.]" (225 Cal.App.3d 1332.) In 1985, the Legislature amended section 871 and declined to add language to include furloughs or home releases. Accordingly, we must presume it intended not to punish failures to return from temporary releases or furloughs through section 871.

■ Respondent maintains section 871 does include this type of escape because Thanh was in the constructive custody of Los Pinos Conservation Camp. He relies on *In re Ernest M.* (1977) 71 Cal.App.3d 890 [139 Cal.Rptr. 773], where a juvenile escaped from a residential treatment facility operated by the Catholic Church. In that case, the court concluded the juvenile "was constructively 'under the custody of a probation officer in a county juvenile hall.' " (*Id.* at p. 894.) In upholding the escape charge, the court reasoned section 871 should be construed "in a commonsense manner to effect the legislative objectives and promote justice. [Citations.]" (*Ibid.*)

Thanh argues *Ernest M.* is inapplicable and that section 871 "[b]y its plain wording . . . does not contemplate an escape from one's own home . . . ." (*In re Michael D.* (1989) 214 Cal.App.3d 1610, 1615 [264 Cal.Rptr. 476].) We agree. Recent cases applying the statute have limited its application to situations specifically provided for in section 871; that is, where the escape occurs while the minor is in the actual custody of a probation officer in a

---

[4]Section 1768.7, subdivision (a) states: "Any person committed to the authority who escapes or attempts to escape from the institution or facility in which he or she is confined, who escapes or attempts to escape while being conveyed to or from such an institution or facility, who escapes or attempts to escape while outside or away from such an institution or facility under custody of Youth Authority officials, officers, or employees, or who, with intent to abscond from the custody of the Youth Authority, fails to return to such an institution or facility at the prescribed time while outside or away from the institution or facility on furlough or temporary release, is guilty of a felony."

[5]Penal Code section 4532. Our holding expresses no opinion with respect to escape statutes relating to adult offenders.

county juvenile facility. (*In re Michael D., supra*, 214 Cal.App.3d 1610; *In re Steven E., supra*, 229 Cal.App.3d 1162.) The effect has been to restrict the constructive custody principle to the facts of *In re Ernest M.*

In *In re Michael D.*, this court first distinguished *Ernest M.* and refused to apply the constructive custody principle. Michael D. had been committed to the Youth Guidance Center for 30 days and, after serving part of that time, was released to his parents' home under a home confinement program. While his parents were away, the minor left and did not return until the next day, violating the terms of the program. The trial court found he had escaped under section 871. (*In re Michael D., supra*, 214 Cal.App.3d at p. 1614.) We reversed and held constructive custody applied in *Ernest M.* because the facility, in that case, was "an authorized substitute for the usual county juvenile institutions" while the same could not be said for the minor's home. (*Id.* at p. 1615.)

Similarly, in *In re Steven E., supra*, 229 Cal.App.3d at page 1167, the Court of Appeal held section 871 did not encompass an escape from an out-of-county licensed group home. The court applied a strict reading of the section and concluded that "[i]f the Legislature intends to punish youths who escape from group homes which are not county institutions, it can easily so provide." (*Ibid.*)

Together these cases demonstrate a strict interpretation of the statute and an unwillingness to apply the constructive custody principle except in narrowly limited circumstances. The Legislature is the proper body to determine which placements fall under section 871. Although it seems clear Thanh has violated his furlough release agreement, section 871 does not address that violation. " '[I]n the absence of a statute authorizing punishment for such act by any prisoner . . . there would be no legal authorization for maintaining a prosecution against a prisoner for such conduct.' [Citation.]" (*People* v. *Martinez* (1987) 188 Cal.App.3d 1254, 1260 [233 Cal.Rptr. 877].)

■ We also find no merit in the People's argument that Thanh escaped during transportation back to Los Pinos. Thanh never appeared at the pickup site and there is no indication he ever intended to go to the site when he left his parents' house. The People offer no support, nor do we find any, for the position that transportation back to a facility begins before a prisoner is picked up.

The judgment is reversed.

Sills, P. J., and Crosby, J., concurred.