[No. H011451. Sixth Dist. Apr. 13, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY PAUL RACKLEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and V.

**COUNSEL**

Michael P. Thorman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WUNDERLICH, J.—**

I

*Procedural Background*

Appellant, Troy Paul Rackley, was charged in a single information with eight felony counts. The first three counts, pertaining to the murder of James Madden in Santa Clara on or about January 29, 1991, alleged as follows: count 1, murder with special circumstances (Pen. Code[1], § 187); count 2, robbery of James Madden (§§ 211, 212.5, subd. (b)); and count 3, burglary of Lee Wards store (§§ 459, 460, subd. (b)). The remaining five counts, pertaining to two robberies and one burglary committed on January 24, 1991, in San Jose, alleged as follows: count 4, burglary of Sportsmen's

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

Supply (§§ 459, 460, subd. (b)); count 5, burglary of Quick Stop Market (§ 459, 460, subd. (b)); count 6, robbery of Ramsis Youssef at Quick Stop Market (§§ 211, 212.5, subd. (b)); count 7, burglary of Gavilan Bottle Shop (§§ 459, 460, subd. (b)); and count 8, robbery of Ben Graber at Gavilan Bottle Shop (§§ 211, 212.5, subd. (b)). As to counts 5 and 6, it was further alleged appellant personally used a deadly or dangerous weapon (§ 12022, subd. (b)).

On April 10, 1991, appellant pleaded guilty to counts 4, 6 and 8. He admitted the personal use enhancement as to count 6. counts 5 and 7 were dismissed. On September 20, 1991, appellant was committed to the California Youth Authority (CYA) for seven years, eight months. He was given 235 days of presentence custody credits. Immediately following his sentencing hearing, appellant escaped from custody. On December 23, 1991, appellant was charged in a separate information with felonious escape. (§ 4532, subd. (b).) On October 26, 1992, appellant pleaded guilty to counts 1, 2 and 3, and admitted the special circumstances. On October 28, 1992, following a court trial on the escape charge, appellant was found guilty.

On May 18, 1993, appellant was sentenced to state prison for a total term of 27 years to life, 25 years to life for the murder conviction and a consecutive 2-year term for the escape conviction. By operation of law these terms were to run concurrently to his previous sentence on counts 4, 6 and 8. (§ 669.) Custody credits were not awarded.

Appellant challenges his convictions and sentence on three grounds. He first contends the trial court erroneously denied his motion to suppress evidence on the grounds that the police conducted an illegal warrantless search of personal items and clothing after he had been booked and admitted into county juvenile hall. Next, he argues his conviction for felonious escape under section 4532, subdivision (b) must be reversed on the grounds that Welfare and Institutions Code section 871, a misdemeanor, precludes prosecution under the felony statute. He finally contends he was improperly denied presentence custody credits on his sentence for murder.

We find appellant was improperly prosecuted under section 4532, subdivision (b) and reverse his conviction for felonious escape. In all other respects, however, we affirm the judgment and sentence.

II

*Factual Background*

On January 24, 1991, at 1:20 a.m., the Sportsmen's Supply on Camden Avenue in San Jose was burglarized. Entry had been accomplished through

a side window which had been pried open. Although numerous guns had been stacked beneath the window, only a stun gun was taken.

On January 24, 1991, at 2:20 a.m., a group of young men robbed Ramsis Youssef at a Quik Stop Market on South Bascom in San Jose. He was stung twice with a stun gun, and the robbers took about $2,250 plus a donut from the store. Appellant was identified as one of the suspects from the security camera video tape. He was holding the stun gun during the robbery.

On January 24, 1991, at 10:11 p.m., the same group of young men robbed Ben Graber at the Gavilan Bottle Shop on Blossom Hill Road in San Jose. When he initially resisted, someone discharged a stun gun in his back. The robbers took a bottle of liquor and about $300 from his wallet and the cash register.

On January 28, 1991, at about 10:30 p.m., the same group of young men forced their way into the Lee Wards store on Stevens Creek Boulevard in Santa Clara. The store manager, James Madden, was forced to open a safe from which approximately $9,000 was taken. He was then bound to a chair with duct tape and stabbed numerous times in the neck and chest, resulting in his death.

Appellant was arrested on January 29, 1991. At 8:30 p.m. he was interviewed by a police detective with the City of San Jose. At this time he admitted his involvement in the two robberies and the burglary committed on January 24, 1991. He also admitted having used the stun gun on Ramsis Youssef. He stated one of his accomplices, Danny Silveria, used the stun gun on Ben Graber. At the time of the interview, appellant had possession of a white fanny pack. It was later established that the fanny pack was identical to those stocked by Lee Wards at the time of the murder of James Madden.

On January 30, 1991, Sergeant Stewart Cusimano of the Santa Clara Police Department interviewed Chris Spencer, John Travis and Danny Silveria who were in custody. These interviews confirmed that several days before the murder, Spencer, Travis, Silveria, Matt Jennings and appellant planned the robbery of Lee Wards as well as the murder of James Madden. They arrived at the store about 8 p.m. and waited for two and one-half hours for the manager to leave. Spencer and Silveria then forced their way inside, and appellant was posted inside the store near the front entrance as a lookout. They were armed with various weapons including a stun gun, knives, a crowbar and a nail puller. Appellant was armed with the nail puller. After the money from the safe was placed in a duffel bag, which was provided by appellant, Spencer, Travis, and Silveria stabbed Madden. Travis

and Silveria had to kill Madden because they were ex-employees of the store and were known to Madden. Appellant was aware of the plan to kill Madden before the night of the robbery.

## III

### *Motion to Suppress**

. . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### *Prosecution for Escape*

Appellant was arrested on January 29, 1991, and admitted into the Santa Clara County Juvenile Hall. His date of birth is October 27, 1973, making him 17 at the time of the underlying offenses and at the time of his subsequent escape. On February 22, 1991, the juvenile court determined pursuant to Welfare and Institutions Code section 707, subdivision (b), that appellant was an unfit subject for treatment under juvenile court law. Nevertheless, he continued to be detained at juvenile hall, pending the disposition of all criminal charges against him. (Welf. & Inst. Code, § 707.1, subd. (b)(1).)

On April 10, 1991, appellant pleaded guilty to the felony offenses charged in counts 4, 6, and 8. Appellant was sentenced on September 20, 1991, to a term of seven years eight months. At the sentencing hearing, the court committed appellant to the CYA and ordered the Department of Corrections to transport appellant to CYA as soon as practicable. While the court's bailiff was transporting appellant back to juvenile hall, appellant escaped. He was arrested later the same day and subsequently charged with felonious escape. (§ 4532, subd. (b).)

■ Appellant contends his felony conviction for escape pursuant to section 4532, subdivision (b) must be reversed on the grounds that he could only be prosecuted under Welfare and Institutions Code section 871, a misdemeanor, which generally covers escapes from juvenile hall. He argues Welfare and Institutions Code section 871 is a special statute and "preempts" or acts as an exception to prosecutions under the more general provisions of section 4532, subdivision (b). We find that section 4532, subdivision (b) does not apply to minors detained in juvenile hall and reverse the conviction for escape.

---

*See footnote, *ante*, page 1659.

██ The preclusion doctrine provides that where a specific or special statute prohibits the same conduct as a more general statute providing a more serious penalty, and violation of the specific statute will necessarily result in a violation of the more general statute, prosecution under the general statute is precluded. (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *People* v. *Rehmeyer* (1993) 19 Cal.App.4th 1758, 1768 [24 Cal.Rptr.2d 321]; *People* v. *Glenos* (1992) 7 Cal.App.4th 1201, 1209 [10 Cal.Rptr.2d 363].)

The doctrine is applicable when each element of the general statute corresponds to an element on the face of the specific statute. However, when the general statute contains an element not included in the four corners of the specific statute, the rule will apply if under a review of the entire context, a violation of the specific statute will necessarily and commonly result in a violation of the general statute. (*People* v. *Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587].) "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent." (*Id.* at pp. 505-506, fn. omitted.)

At first blush it would appear the preclusion doctrine requires us to reject appellant's argument. Each element of section 4532, subdivision (b), the alleged general statute, does not correspond to an element on the face of Welfare and Institutions Code section 871, the alleged specific statute. Section 4532, subdivision (b), requires that the escapee be a prisoner who has been arrested and booked for, charged with, or convicted of a *felony*. (§ 4532, subd. (b).) Welfare and Institutions Code section 871 merely requires that the escapee be a *person* who is being transported to or from a county juvenile hall, regardless of whether that person has been committed to juvenile hall for a misdemeanor or felony offense. (Welf. & Inst. Code, § 871, subd. (a).) For the same reason, a violation of Welfare and Institutions Code section 871 will not necessarily or commonly result in a violation of section 4532, subdivision (b).

On a more fundamental level, however, we note that a logical prerequisite to the preclusion doctrine is that two statutes apply to the same conduct. " '[W]here two statutes do not purport to deal with the same subject matter, there is no need to resort to the rule of construction that the more specific statute controls. The statutes simply do not cover the same subject matter and therefore are not in conflict.' [Citations.]" (*People* v. *Salemme* (1992) 2 Cal.App.4th 775, 784 [3 Cal.Rptr.2d 398].) ██ We do not believe the Legislature intended section 4532, subdivision (b) to apply to appellant's conduct.

The fundamental objective of statutory interpretation is to ascertain and effectuate legislative intent. To determine this intent we first look to the

language used. When that language is clear and unambiguous, there is no need for construction. If the language is susceptible to more than one reasonable interpretation, we may utilize various extrinsic aids, including the objects to be achieved by the statute, the legislative history, public policy and the statutory scheme of which the statute is a part. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].) When language in a penal statute is ambiguous, the policy of the state is to interpret the statute as favorably to the defendant as is reasonably possible given the statute's language and application. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) ■ Finally, we note that in the absence of legislation specifically authorizing punishment for an escape by any prisoner, there is no legal authorization for maintaining a prosecution against the prisoner. (*In re Thanh Q.* (1992) 2 Cal.App.4th 1386, 1390 [4 Cal.Rptr.2d 19]; *In re Michael D.* (1989) 214 Cal.App.3d 1610, 1614 [264 Cal.Rptr. 476]; *People* v. *Martinez* (1987) 188 Cal.App.3d 1254, 1260 [233 Cal.Rptr. 877].)

■ At the time of appellant's escape, section 4532, subdivision (b), provided in pertinent part: "Every prisoner arrested and booked for, charged with, or convicted of a felony who is confined in any county or city jail or prison or industrial farm or industrial road camp or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, or who is confined pursuant to Section 4011.9, who escapes or attempts to escape from such county or city jail, prison, industrial farm or industrial road camp or from the custody of the officer or person in charge of him or her while engaged in or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he or she is, or from confinement pursuant to Section 4011.9, is guilty of a felony . . . ." (Stats. 1985, ch. 915, § 1, p. 2911.)

Respondent argues appellant violated section 4532, subdivision (b), because he was convicted of a felony and escaped from the custody of an officer in whose lawful custody he was placed. The literal language of the statute is susceptible to this interpretation. However, this interpretation appears to ignore the use of the word "prisoner," as interpreted by Supreme Court precedent. Further, the legislative history of the statute as well as a review of other statutes making escape a crime in a variety of circumstances compel us to conclude that section 4532, subdivision (b) was intended to apply only to prisoners who have been incarcerated in an adult penal institution.

This statute and its history were discussed extensively by our Supreme Court in *In re Culver* (1968) 69 Cal.2d 898 [73 Cal.Rptr. 393, 447 P.2d 633].

In *Culver*, the defendant was suspected of committing an assault with a deadly weapon. When a police officer attempted to arrest him, he struggled with the officer and fled. Within an hour, he was taken into custody. Based upon his flight from the initial arresting officer, he was convicted of violating section 4532, subdivision (b). The people argued in that case that defendant was a person who had been arrested for a felony and who had escaped from the lawful custody of the officer. This literal interpretation of the language of the statute was rejected by the Supreme Court.

The issue presented to the Supreme Court was whether a person who has been arrested for a felony and escapes before being taken to a jail is a "prisoner" within the meaning of the statute. The court concluded: "The legislative history of subdivision (b) and the related provision of subdivision (a) of section 4532 indicates that section 4532 applies only to persons incarcerated in jails and other institutions of confinement who escape therefrom or such persons who escape from the custody of those to whom they have been entrusted while temporarily outside such places of confinement." (*In re Culver, supra*, 69 Cal.2d at p. 900, fn. omitted; see also *People* v. *Diaz* (1978) 22 Cal.3d 712, 715-717 [150 Cal.Rptr. 471, 586 P.2d 952].)

There is no question that the case before us is factually different than that in *Culver*, since in our case appellant clearly was confined in a detention facility and had been for some time prior to his escape from the officer. The pertinent question before us is what type of "jail" or "institution of confinement" will trigger a violation of this statute. Stated another way, did the Legislature intend to make an escape by a minor from a juvenile detention facility a felony under section 4532, subdivision (b)? Further discussion in *Culver* suggests not.

The first escape statute was enacted in 1855 and applied only to persons convicted and sentenced to state prison. (*In re Culver, supra*, 69 Cal.2d at p. 900; Stats. 1855, ch. 160, § 1, p. 203.) In 1872, section 107, the predecessor to section 4532, was enacted, which provided: " 'Every prisoner confined in any other *prison* than the State Prison who escapes or attempts to escape therefrom is guilty of a misdemeanor.' " (*In re Culver, supra*, 69 Cal.2d at p. 901, fn. 3, italics added.) In 1923, section 107 was amended to include " 'every prisoner charged with or convicted of a felony . . . who escapes . . . from the lawful custody of any officer.' " The purpose of this amendment was not to enlarge the meaning of the word "prisoner," to include persons who had been arrested but not yet imprisoned, but was to "extend the coverage of the section to prisoners incarcerated in facilities other than prisons or who might be temporarily in custody outside the walls of a custodial facility, and to make the offense a felony instead of a misdemeanor." (*In re Culver, supra*, at p. 901.) The bill containing this amendment was

entitled " 'An act to amend section [107] of the Penal Code relating to escapes and attempted escapes from county jails, city jails, and from the custody of the sheriff while at work on any county road.' " (*Id.* at pp. 901-902; Stats. 1923, ch. 125, § 1, p. 270.)

In 1941, section 107 was substantially reenacted as section 4532. The enactment was undertaken pursuant to a 1940 constitutional amendment that authorized the Legislature to create a statutory scheme for the management of *prisons.* Section 4532, was placed in the recently enacted title 5, entitled " 'Offenses relating to Prisons and Prisoners.' " (*In re Culver, supra,* 69 Cal.2d at pp. 902-903.) It remains in that title today.

The many references to "prison" and "jail" throughout these predecessor statutes lead to the conclusion that the statute was meant to apply to those persons incarcerated in an adult penal institution. Historically, juvenile hall has not been considered a jail or prison. As early as 1915, the Legislature was making a distinction between facilities housing minors and jails and prisons, used to house adults. In 1915, the Legislature enacted the " 'juvenile court law,' " which was to apply to any person under the age of 21 years. (Stats. 1915, ch. 631, § 1, p. 1225.) Section 22 of that enactment imposed a duty on the legislative body of every county to maintain a suitable house or place for the detention of wards of the juvenile court, and further provided: "Such detention home must not be in, or connected with any jail, or prison, and shall be conducted in all respects as nearly like a home as possible and shall not be deemed to be nor be treated as a penal institution." (Stats. 1915, ch. 631, § 22, p. 1247.) In 1937 the Welfare and Institutions Code was established, and these provisions pertaining to juvenile hall were reenacted as sections 660 and 661. (Stats. 1937, ch. 369, art. 5, p. 1028.) Today, Welfare and Institutions Code, section 851 provides: "The juvenile hall shall not be in, or connected with, any jail or prison, and shall not be deemed to be nor be treated as a penal institution. It shall be conducted in all respects as nearly like a home as possible."

Section 4532 has been amended numerous times since its enactment in 1941. (*In re Culver, supra,* 69 Cal.2d at p. 903.) The Legislature certainly was aware that juvenile hall or a "detention home" for minors was not considered a jail or prison, yet during all these years it did not attempt to include juvenile detention facilities in the list of those jails or detention facilities enumerated in section 4532, subdivision (b).

Nor has it attempted to include minors as a category of "prisoner" referred to in the statute except those minors being housed in an *adult correctional facility.* In 1991, section 4532, subdivision (b) was amended to add the

phrase "and every person committed by order of the juvenile court" to the list of "prisoners" subject to the statute. (Stats. 1991, ch. 1162, § 1.) The Legislative Counsel's Digest, which describes the bill to amend the statute, provides the following explanation for the new language: "Existing law provides that, under certain circumstances, a minor may be lawfully detained in an adult correctional facility instead of a juvenile facility. Existing law also provides that it is a crime, punishable as specified, for (1) a minor committed to a juvenile facility, as specified, to escape or attempt to escape from that facility, and (2) an adult prisoner arrested and booked for, charged with, or convicted of a misdemeanor or a felony, who is confined in an adult correctional facility, as specified, to escape or attempt to escape from that facility. [¶] This bill would provide that it is a crime, punishable as specified, for a person committed by order of the juvenile court to an adult correctional facility to escape or attempt to escape from that facility." (*Ibid.*)

Although this amendment did not become effective until after appellant's escape, it certainly reflects an intent on the part of the Legislature to treat this code section as applying only to adult penal institutions. It has also been the law since 1949 that a minor over the age of 16 years may be deemed an unfit subject for treatment under the juvenile court law and may be tried as an adult and ultimately convicted of a felony, if so charged. (Stats. 1949, ch. 762, § 1, pp. 1492-1493.) Such a minor may nevertheless be detained at juvenile hall pending the outcome of criminal charges filed against him or her, unless the court finds the minor will pose a danger to the public or other minors detained in juvenile hall. (Welf. & Inst. Code, § 707.1, subd. (b)(1), former § 707.1, added in 1975 by Stats. 1975, ch. 1266, § 5, p. 3325.) If the Legislature had intended to include this category of minors in the parameters of section 4532, it could easily have done so.

We also recognize that the Legislature has seen fit to treat the criminal offense of escape in at least three other code sections. The primary distinction between these statutes is not the nature of the crime for which the person's liberty has been deprived, or the age of the person detained, but the nature of the institution or detention facility in which the person is being held. Section 4530 governs the crime of escape or attempted escape by a prisoner confined in a *state prison* and categorizes this crime as a felony. Welfare and Institutions Code section 1768.7 makes it a felony to escape or attempt to escape from the *CYA*. Finally, Welfare and Institutions Code section 871 provides that a person escaping or attempting to escape from a *county juvenile home* is guilty of a misdemeanor. Given this legislative scheme, it is certainly consistent that the Legislature intended section 4532 to apply to city and county jails or prisons for adult prisoners other than state prisons. (See *In re Thanh Q., supra,* 2 Cal.App.4th at pp. 1388-1389, and fn. 5.)

We recognize that appellant was being tried as an adult offender and that he, indeed, had been convicted of a felony on the day he escaped from custody. However, the fact that he was found unfit for treatment under the juvenile court law does not convert juvenile hall into an adult detention facility, such as a jail or prison, and as discussed above does not mandate that he be housed in an adult facility pending resolution of criminal charges against him. At the time of his escape, appellant was being transported back to *juvenile hall* for an unknown period of time to await his transference to the custody of the Department of Corrections and transportation to CYA. We do not believe the Legislature intended section 4532, subdivision (b), to apply to appellant's conduct.

Appellant's conviction for felonious escape, therefore, must be reversed.

## V

### *Presentence Custody Credits**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### *Disposition*

Appellant's conviction for violating section 4532, subdivision (b) is reversed. As discussed in Part V, we further order the trial court to correct the abstract of judgment to reflect the appropriate credit for time served following his sentencing on May 18, 1993, as to the murder conviction and to forward a copy of the corrected abstract to the Department of Corrections. In all other respects, the judgment is affirmed.

Cottle, P. J., concurred.

MIHARA, J.—I concur in the majority opinion with one exception. With respect to the issue presented in section V, I concur in the result only.

Respondent's petition for review by the Supreme Court was denied July 13, 1995. George, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1659.