[No. A070891. First Dist., Div. Two. June 21, 1996.]

In re JASON G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JASON G., Defendant and Appellant.

**COUNSEL**

Susan Raffanti, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Donna B. Chew, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KLINE, P. J.—Jason G. (the minor) appeals from an order placing him on probation. He contends that the court improperly sustained an allegation that he escaped from a county facility within the meaning of Welfare and Institutions Code section 871.[1] We agree and reverse the finding as to that charge.

### Procedural and Factual Background

A petition filed May 26, 1995,[2] and amended June 8, alleged that the minor (born May 8, 1978) came within section 602 in that he had committed: count 1—misdemeanor battery of his father (Pen. Code, § 242); count 2 —misdemeanor possession of an opium pipe (Health & Saf. Code, § 11364); count 3—receiving stolen property (Pen. Code, § 496, subd. (a)); count 4— grand theft (Pen. Code, § 487, subd. (a)); and count 5—misdemeanor escape (§ 871).

On June 9, the trial court issued an arrest warrant because the minor had escaped from the facility known as "Daybreak." The minor appeared on June 26, and the court recalled its bench warrant.

At the outset of the jurisdiction hearing on July 18, the district attorney dismissed count 2 of the petition. After hearing testimony, the court sustained counts 1, 4 (reduced to petty theft) and 5.

Disposition hearing was held on August 1. The court committed the minor to Fouts Springs Boys Ranch with a maximum period of confinement of one year, four months. The court suspended the commitment and placed the minor on probation, to be cared for in his mother's home.

The evidence adduced at the jurisdiction hearing relevant to the escape issue was as follows. Daybreak Child Care Network is a "privately run" "group home facility" which is "an alternative to the Juvenile Hall Detention Facility." After the minor had been detained at juvenile hall, Daybreak case manager Sonia McQuilliam interviewed him and determined it was appropriate to bring him to Daybreak. She personally brought him to Daybreak, a building adjacent to juvenile hall, on June 7, before she left work at 6 or 6:30 p.m. When she returned to work the next day, the minor was not there; he did not have permission to leave.

---

[1] All statutory citations are to the Welfare and Institutions Code unless otherwise indicated.
[2] All dates are in 1995 unless otherwise indicated.

*Discussion*

██ Section 871, subdivision (a) provides, "Any person under the custody of a probation officer or any peace officer in a county juvenile hall, or committed to a county juvenile home, ranch, camp, or forestry camp, or any person being transported to or from a county juvenile hall, home, ranch, camp, or forestry camp, who escapes or attempts to escape from that place or during transportation to or from that place, is guilty of a misdemeanor, punishable by imprisonment in the county jail not exceeding one year."

In finding that the minor escaped from a facility that came within section 871, the trial court took judicial notice that Daybreak, which we assume to be an independent nonprofit organization, had a contract with the county to take overflow from juvenile hall, was located in a building adjacent to juvenile hall and, although privately run, was "funded by the county" though the record does not reveal the method of funding. Also, minors placed at Daybreak receive day-for-day credit, just as they would at juvenile hall. Significantly, however, the record is bereft of any information from which it can be inferred that Daybreak was established by the county or that the county administers or maintains the facility.

One of the elements of a violation of section 871 is that the minor escape from "a county juvenile hall, or . . . a county juvenile home, ranch, camp, or forestry camp." (*People* v. *Waters* (1985) 163 Cal.App.3d 935, 938 [209 Cal.Rptr. 661]; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Governmental Authority, § 1200 et seq., p. 1379.) The burden was on the People to prove beyond a reasonable doubt every element of the offense with which the minor was charged, including the nature of the facility. (§ 701; Cal. Rules of Court, rule 1488(b); *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 963 [127 Cal.Rptr. 135, 544 P.2d 1335]; *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1008-1009 [138 Cal.Rptr. 515]; 10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, § 573, p. 643.) The People failed to develop a record sufficient to show this element of the offense beyond a reasonable doubt.

The trial court compounded the error by "interpreting" section 871 to include a facility not enumerated therein. The statute expressly provides that it applies to only five specific county facilities: "[1] juvenile hall . . . [2] county juvenile home, [3] ranch, [4] camp, or [5] forestry camp." The statute is clear and unambiguous; it has a plain meaning which the courts are bound to follow. ██ " '. . . "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." [Citations.]'

(*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)" (*In re Aaron S.* (1991) 228 Cal.App.3d 202, 208 [278 Cal.Rptr. 861]; *People* v. *Rackley* (1995) 33 Cal.App.4th 1659, 1666 [40 Cal.Rptr.2d 49].)

■ In *In re Steven E.* (1991) 229 Cal.App.3d 1162 [280 Cal.Rptr. 540], the minor escaped from two facilities—Boys Republic, a licensed group home, and P and V, a group home with unknown licensing status. Both placements were out-of-county, and the parties agreed that neither was "strictly a section 871 placement." (*Id.* at p. 1165.) The Court of Appeal held that "section 871 does not contemplate an escape from a facility not provided and maintained by the county nor does it purport to punish such conduct. [Citation.] As is conceded, appellant did not escape from a county institution." (*Id.* at p. 1167.)

The *Steven E.* court observed that if the Legislature intended to punish minors who escape from youth homes which are not county institutions, it could so provide. The court therefore declined to create judicial additions to the enumerated county institutions from which escape was made punishable. (229 Cal.App.3d at p. 1167.) In sum, *Steven E.* correctly holds that in section 871 the Legislature created a statutory offense which must be strictly construed. (229 Cal.App.3d at p. 1166.)

Reasoning analogous to that in *Steven E.* governed in *In re Thanh Q.* (1992) 2 Cal.App.4th 1386 [4 Cal.Rptr.2d 19]. Thanh was committed to an Orange County juvenile facility. Ten months later, he was permitted an overnight furlough at the end of which he failed to return to his probation officer at the agreed meeting place. The trial court found a section 871 violation because Thanh had escaped from the constructive custody of the juvenile facility. The Court of Appeal reversed because the plain language of the statute did not include escape while on home furlough. Also, because the Legislature had provided punishment for escape while on furlough from the California Youth Authority (§ 1768.7), the court inferred that the omission in section 871 was intentional. (2 Cal.App.4th at pp. 1388-1389.)

Apparently responding to *In re Thanh Q.*, the Legislature amended section 871, adding subdivision (c) which now proscribes willful failure to return to juvenile hall, a juvenile home, ranch, camp, or forestry camp. (Stats. 1993, ch. 918, § 1, No. 10 West's Cal. Legis. Service, p. 4168.) But the Legislature declined to expand that list of specific facilities in response to *Steven E.* In fact, the Legislature twice reiterated the list, limiting it to the five facilities. The new subdivision (c) of section 871 provides: "The willful failure of a

person under the custody of a probation officer or any peace officer in *a county juvenile hall,* or committed to *a county juvenile home, ranch[,] camp, or forestry camp,* to return to the *county juvenile hall, home, ranch, camp, or forestry camp* at the prescribed time while outside or away from the county facility on furlough or temporary release constitutes an escape . . . ." (Italics added.)

When, as here, the Legislature amends a statute which has been judicially construed, the Legislature is presumed to be "fully cognizant of such construction . . . ." *(Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) When the Legislature adopted subdivision (c) but reiterated the list of five county facilities and declined to amend the list, it demonstrated a clear intent to overrule the holding in *Thanh* but to adopt the judicial construction of *Steven E.*

Our reading of the legislative intent finds further support in the Legislative Counsel's Digest of Assembly Bill No. 2087 (1993-1994 Reg. Sess.), which amended section 871: "Under existing law, any person in custody in, or committed to, any of *enumerated* county juvenile facilities who escapes or attempts to escape from the facility, or during transportation to or from the facility, is guilty of a misdemeanor . . . . [¶] This bill would provide that the willful failure by such a person to return to *such a facility* . . . [is] punishable as a misdemeanor." (Stats. 1993, ch. 918, italics added.)

An earlier decision, *In re Ernest M.* (1977) 71 Cal.App.3d 890 [139 Cal.Rptr. 773], which upheld a finding of escape under section 871, is distinguishable. Ernest had been committed by the Los Angeles County Juvenile Court to CEDU Foundation. While he was being held at juvenile hall pending placement at CEDU, his probation officer authorized an emergency temporary placement at Rancho San Antonio, a residential treatment facility operated by the Catholic Church. The Rancho was "widely used" by the juvenile court as a " 'suitable placement' " facility for young men from Los Angeles, Orange and San Diego Counties. There were no private placements in the facility. (71 Cal.App.3d at p. 892.) Ernest left the Rancho without permission.

The trial court held that the Rancho was widely used as a suitable placement facility and met the standards of the probation department and therefore was a county facility within the meaning of section 882. That

section provides in relevant part that "juvenile homes, ranches, camps or forestry camps shall be in charge of a superintendent or director and *may be established in conjunction with the probation department,* or in any manner determined by the county board of supervisors." (Italics added.). (*In re Ernest M.,* supra, 71 Cal.App.3d at p. 893.)

The Court of Appeal referred to section 882 and other provisions of the Welfare and Institutions Code which established juvenile homes, ranches and camps (§§ 880-883) and noted that the Rancho lacked characteristics of those establishments, such as vesting complete operation and authority in the county, a director appointed by the probation officer and approved by the board of supervisors, and construction or operation with public funds. However, the Court of Appeal declined to reach the section 882 issue, holding instead that when Ernest left the Rancho without permission, he was in transit to CEDU and was therefore still in custody, albeit constructive, of the probation officer. Section 871 expressly applies to minors in custody of a probation officer but does not mention those in constructive custody. On this point the court reasoned as follows.

"Contrary to appellant's contention that escape statutes are strictly construed, the courts have been inclined to construe such measures in accord with their fair import in a commonsense manner to effect the legislative objectives and promote justice. [Citations.] Commonsense interpretation of such statutes often requires application of the doctrine of constructive custody. [Citations.] Appellant was constructively 'under the custody of a probation officer in a county juvenile hall' and therefore the evidence was sufficient to support the trial court's order sustaining the petition." (*In re Ernest M.,* supra, 71 Cal.App.3d at p. 894.)

Here, when the minor escaped, he was neither in transit nor in custody, constructive or otherwise, of his probation officer. Further, as we have seen, the People did not meet their burden of showing that, at the relevant time, the minor was under the custody of his probation officer "in a county juvenile hall, or committed to a county juvenile home, ranch, camp, or forestry camp" as required by section 871, and therefore the trial court erred in finding that he had violated that section. Nor was there any showing that the minor was in a facility defined by section 882. The finding of a violation of section 871 cannot be upheld.

The order is modified by deleting the finding that count 5 is true and adding a finding that count 5 is not true. The maximum period of

confinement is reduced from one year, four months to one year. As modified, the order is affirmed.

Haerle, J., and Hitchens, J.,* concurred.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.