[No. F015027. Fifth Dist. Oct. 18, 1991.]

In re EDDIE D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
EDDIE D., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I.B and III.

## COUNSEL

K. Douglas Cummings, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Karen L. Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BROWN (G. A.), J.*—Eddie D., a minor, appeals from a judgment of the juvenile court finding on a supplemental petition (Welf. & Inst. Code, § 777) that he violated Penal[1] Code section 148[2] and committing him to the California Youth Authority.

### PROCEDURAL HISTORY

On December 9, 1986, Eddie D. was named in a petition filed in the Kern County Juvenile Court alleging six theft-related counts. At the jurisdictional

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise indicated.

[2]Section 148 in pertinent part provides: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . is punishable . . . ."

hearing on January 12, 1987, Eddie admitted three counts as part of a bargain wherein the other three counts were dismissed. The court declared the three remaining counts to be misdemeanors and found Eddie to be a person described by Welfare and Institutions Code section 602. A subsequent dispositional hearing was held on January 27, 1987, at which time the court ordered Eddie committed to the Kern Youth Facility, with Eddie not to be confined beyond one year four months.

It appears that on June 16, 1987, another dispositional hearing was held, at which time Eddie was released to juvenile hall.

On July 6, 1987, the court ordered Eddie to a group home in San Jose.

On March 1, 1988, a supplemental petition was filed alleging Eddie's failure to abide by the rules of the group home in San Jose. At the jurisdictional hearing Eddie stipulated a factual basis and admitted the allegations of the petition. A dispositional hearing was held on March 16, 1988, and Eddie was recommitted to the Kern Youth Facility.

At a hearing held on September 15 and September 18, 1989, Eddie was adjudged a ward of the court and placed in juvenile hall pending placement. On March 16, 1990, he was released to the custody of his mother on probation.

On or about May 14, 1990, Eddie was the subject of a new petition alleging two offenses arising out of a fight on school property. He admitted one offense at the jurisdictional hearing, and the other was dismissed. At his June 21, 1990, dispositional hearing, the referee directed that Eddie be sent to Camp Erwin Owen. Eddie requested a de novo hearing, and the court thereafter directed that Eddie instead be housed in juvenile hall pending suitable home placement.

On or about August 21, 1990, a supplemental petition was filed alleging that Eddie had resisted, delayed or obstructed a public officer in the discharge or attempted discharge of her duties, a violation of section 148. The petition further alleged that previous dispositions had not been effective in Eddie's rehabilitation and that Eddie had violated his probation.

Eddie denied the allegations of the petition, and at a contested jurisdictional hearing the court found the petition's allegations to be true. The court thereafter ordered that Eddie be committed to the California Youth Authority (CYA).

FACTS

On July 22, 1990, Taniya Davis was employed as a group counselor I at the juvenile hall by the Kern County Probation Department in Bakersfield, working on the unit where Eddie was assigned. Eddie was a juvenile hall ward. Part of Davis's duties was to work with juveniles who were serving time at juvenile hall. On the morning of July 22, 1990, Davis took her wards, including Eddie, out for physical education. During the physical education period, Eddie was involved in a fight with another ward. Davis and another counselor attempted to break up the fight and forced Eddie to the ground. When they attempted to handcuff him, he resisted, and it took some four minutes to fully restrain and handcuff him.

Eddie stated he did not know that Davis was a peace officer.

DISCUSSION

I. *Sufficiency of the Evidence.*

A. *Davis was a "public officer."* Appellant contends the evidence was insufficient to sustain the implied findings that Davis was a public officer, that appellant knew she was a peace officer, and that it was the duty of a group counselor to restrain wards engaged in fights.

Section 148, subdivision (a) (see fn. 2, *ante*) requires that the victim be a public officer, a peace officer or an emergency medical technician.

Originally, section 148 referred only to a "public officer" as victim. Peace officers were not mentioned. In 1983, section 148 was amended by Assembly Bill No. 158 (Stats. 1983, ch. 73, p. 166) to refer to "any public officer or peace officer."

In *People* v. *Scrivens* (1969) 276 Cal.App.2d 429 [81 Cal.Rptr. 86], the court stated that "Section 148 . . . has reference to 'public officers' a term which is more general than the term 'peace officer' . . ." (*id.* at p. 433, fn. omitted). The term "public officer" is defined in Government Code section 82048 to mean "every member, officer, employee or consultant of a state or local government agency . . . ." Under section 148, the term public officer has been construed broadly to include a peace officer (*In re Frederick B.* (1987) 192 Cal.App.3d 79, 89-90 [237 Cal.Rptr. 338]).

In order to ascertain the intent of the Legislature when it amended section 148 in 1983, it is appropriate to refer to the Legislative Counsel's Digest. (*California Teachers' Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606,

613 [190 Cal.Rptr. 453].) The Summary Digest of the bill states the original language "has been interpreted by judicial decision to apply to peace officers as public officers. [¶] This bill would specify that the provision applies to any public officer or peace officer." (Legis. Counsel's Dig., Assem. Bill No. 158, 4 Stats. 1983 (Reg. Sess.) Summary Dig., p. 23.)

Thus, it does not appear that the Legislature intended public officers and peace officers necessarily to be exclusive of each other; rather, it appears the intention of the Legislature was to clarify rather than modify the statute by adopting case interpretation that all peace officers are public officers. (*In re Frederick B.*, *supra*, 192 Cal.App.3d at pp. 89-90.) It follows that while all peace officers are public officers, all public officers are not peace officers.

Clearly, Davis was a peace officer within the meaning of the statute. Section 830 provides:

"Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer. The restriction of peace officer functions of any public officer or employee shall not affect his or her status for purposes of retirement." Section 830.5, subdivision (b) provides in pertinent part:

"The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [A]ny superintendent, supervisor, or employee having custodial responsibilities in an institution operated by a probation department, or any transportation officer of a probation department."

The Kern County juvenile hall is under the management and control of the probation officer (Welf. & Inst. Code, § 852; *In re Ricardo M.* (1975) 52 Cal.App.3d 744, 752 [125 Cal.Rptr. 291]), and it is undisputed that Davis was a permanent employee of that department.

The question remains as to whether Davis had "custodial responsibilities" as required by section 830.5, subdivision (b). The evidence on this issue consisted of testimony of Davis and her superior, David Meeks. Davis stated

she was a peace officer and the reason she was a peace officer was because she went through training and completed a test.

"Q. [By defense counsel] Now, you indicated in response to a question by [the prosecutor] that you are a peace officer; correct?

"A. [By Davis] Yes.

"Q. What leads you to believe you are a peace officer?

"A. We went through the training and we completed the test. They said that's how we would get our peace officer status. That was in May.

"Q. Do you have anything by way of a document or certification that says you are, in fact, a peace officer?

"A. No, the only thing I have is that I completed the course that we were required to take. It's a certificate."[3]

Mr. David Meeks, Davis's superior, testified that any of his staff who went through section 832 training was a peace officer, and while he didn't have personal knowledge as to Davis, all of the counselors at the juvenile hall had completed the course.

Pursuant to notice to the parties served under Evidence Code section 455, this court takes judicial notice pursuant to Evidence Code section 459 of certain official Kern County documents relating to the duties of a Kern County Probation Department employee described as group counselor I as of July 22, 1990. Certified copies of these documents have been served on appellant's counsel. We take judicial notice of the juvenile court staff rules. (Evid. Code, § 452, subd. (h); Cal. Code Regs., tit. 15, §§ 4278, subd. (a), 4295.) That document indisputably establishes Davis had custodial responsibilities of minors, including the responsibility to restrain wards involved in fighting at juvenile hall during the physical education class on July 22, 1990. It would unduly extend this opinion to set forth verbatim the juvenile rules pertaining to the juvenile staff as they relate to a counselor's custodial responsibilities. We also mention in passing the fact that Davis was actually

---

[3]In context with the testimony of David Meeks, Davis's superior, shows she was referring to section 832 which provides in pertinent part: "(a) Every person described in this chapter as a peace officer, shall satisfactorily complete an introductory course of training prescribed by the Commission on Peace Officer Standards and Training. . . . [¶] (b)(1) Every such peace officer described in this chapter, within 90 days following the date that he or she was first employed by any employing agency, shall, prior to the exercise of the powers of a peace officer, have satisfactorily completed the course of training as described in subdivision (a)."

exercising custodial responsibilities at the time of the incident in question supports an inference that she had such responsibilities.

We hold as a matter of law Davis was a peace officer within the meaning of section 830.5, subdivision (b).

Since every peace officer is a public officer, the fact the petition alleged the victim was a public officer without mentioning peace officer is immaterial. Moreover, at trial all of the evidence and discussion related to whether Davis was a peace officer, not to whether she was a public officer, which, as a peace officer as we have explained, she of course was. Appellant suffered no prejudice. (§ 960; *In re Frederick B., supra*, 192 Cal.App.3d at pp. 89-90.)

■ Since we have held Davis was a peace officer as a matter of law, the trial court's reliance on section 831 was in error. Section 831 describes a "custodial officer . . . , not a peace officer." By its express terms, a custodial officer within the meaning of that section excludes a peace officer. Moreover, the section refers to "custody of prisoners" and "serving a sentence," language more appropriate to a penal institution housing prisoners rather than to wards in a juvenile detention facility.

While we hold the trial court's application of section 831 was error, we nevertheless affirm on the correct ground (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117]; *International etc. Workers v. Landowitz* (1942) 20 Cal.2d 418, 423 [126 P.2d 609]).

B.   *Appellant's knowledge that Davis was a peace officer.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.   *Sufficiency of Evidence to Support Finding Previous Disposition Was Ineffective.*

■ Appellant contends the court's determination below that previous court orders had not been effective in his rehabilitation was not supported by an adequate showing.

Welfare and Institutions Code section 777, subdivision (a)(2), directs that a supplemental petition seeking to change or modify a previous dispositional order "shall contain a concise statement of facts sufficient to support the

---

*See footnote, *ante*, page 417.

conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." The petition in this regard alleged in pertinent part in count II:

"Said minor was adjudged a Ward of the Juvenile Court under Section 602 of the Welfare and Institutions Code and placed on probation. The previous dispositions of the Court have not been effective in the rehabilitation of the minor, in that the minor is in violation of said probation by the commission of the offense/s alleged in this Petition; thereby placing said minor within the provisions of Section 777a of the Welfare and Institutions Code. . . .

"Minor is in Juvenile Hall."

In upholding such a petition the court must expressly find that the previous disposition had not been effective in the minor's rehabilitation. (See, e.g., *In re Reynaldo R.* (1978) 86 Cal.App.3d 250, 255 [150 Cal.Rptr. 71].) This the court did.

Under California Rules of Court,[4] rule 1431(e), the hearing on the supplemental petition is to be bifurcated. Rule 1431(e)(1) directs the proceedings at the first, jurisdictional phase, while rule 1431(e)(2) controls the dispositional hearing.

Rule 1431(e)(1) states:

"The procedures relating to jurisdiction hearings prescribed in chapter 7 for dependent children and chapter 8 for delinquent children shall apply to the determination of the allegations of a subsequent or supplemental petition. At the conclusion of the hearing on a subsequent petition the court shall make a finding that the allegations of the petition are or are not true. At the conclusion of the hearing on a supplemental petition the court shall make findings that:

"(A)   The factual allegations are true or are not true; and

"(B)   The allegation that the previous disposition has not been effective is or is not true; . . ."

Clearly it is the intent of the rule that the determination whether the previous disposition has been effective is to be made at the end of the jurisdictional portion of the hearing. (*In re Joe A.* (1986) 183 Cal.App.3d 11,

---

[4]All rule references are to the California Rules of Court.

24 [227 Cal.Rptr. 831].) In fact, that is what happened below. At the conclusion of the jurisdictional portion on September 18, 1990, the court found the allegation in count I (the § 148 violation) to be true, then stated, "Therefore, Count [II] will be true as well. The Court makes those findings beyond a reasonable doubt." Count II was the allegation that the previous disposition had not been effective.

It is manifest whatever evidence the court relied on in finding that the previous disposition had not been effective was presented prior to the conclusion of the jurisdictional hearing on September 18, 1990. Evidence presented at the dispositional hearing would be irrelevant in determining whether the court's finding was supported at the time it was required and made, and there is no evidence in this record that the court considered any improper evidence (*In re Joe A., supra,* 183 Cal.App.3d at pp. 26-27).

The only evidence presented at the jurisdictional hearing relevant to this issue pertained to the actual incident giving rise to the section 148 allegation and that appellant was a ward and committed the offense at juvenile hall. We need not repeat the facts of the offense here.

■ The question is was this evidence sufficient to support a finding appellant's previous disposition had not been effective within the standards established by *In re Frederick G.* (1979) 96 Cal.App.3d 353, 362-366 [157 Cal.Rptr. 769] and *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].

In *In re Joe A., supra,* 183 Cal.App.3d 11, this court held that evidence a minor had failed to complete an 80-hour work program and attend a theft awareness seminar due to transportation difficulties was insufficient to support a finding that the minor's previous disposition had not been effective. In *In re Joe A.* we stressed "the instances of shoplifting underlying the original petition were apparently appellant's first involvement with the juvenile court" and that "[t]he behavior underlying the factual allegations in the instant case was not criminal behavior; it was merely behavior inconsistent with conditions of probation imposed by the juvenile court." (*Id.* at pp. 28-29.)

Here the evidence demonstrates criminal conduct in violation of section 148, thus distinguishing *In re Joe A.*

We conclude the evidence of Eddie's criminal conduct was sufficient to support the allegation that the prior disposition had been ineffective.

III.   *Commitment to CYA.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

---

*See footnote, *ante*, page 417.