[No. A072476. First Dist., Div. Three. Sept. 30, 1996.]

In re ROCHELLE B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROCHELLE B., Defendant and Appellant.

## COUNSEL

Catalina Lozano, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Margo J. Yu, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WALKER, J.**—Rochelle B. appeals from a juvenile court judgment and disposition order on a petition under Welfare and Institutions Code section 602, sustaining an allegation that she committed a battery on a "custodial officer" engaged in the performance of her duties, in violation of Penal Code section 243.1.[1] She contends that she was wrongly charged and tried under section 243.1 because the victim of the battery was a juvenile probation counselor and not a "custodial officer" as defined by section 831, subdivision (a). We agree. Therefore we reverse the order and judgment, and remand the matter to the juvenile court for redisposition.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 1995, Patricia Barrett was employed as a temporary probation counselor at the Contra Costa County Juvenile Hall, where appellant was being detained.[2] At approximately 5:45 p.m., Barrett observed appellant and lead counselor Kathy Mazariegos in the foyer area of the living unit designated to accommodate juvenile females. Mazariegos was asking appellant to go to her room until the counselors could get another resident, Bonnie C., to go to her room. For safety reasons, the counselors did not want the two girls in the same area at the same time. Appellant was agitated and upset because the counselors were asking her to go to her room first. Barrett approached in order to assist Mazariegos. As appellant and Bonnie screamed epithets at each other, Barrett tried to persuade appellant to go to her room while the counselors got Bonnie to her room. Appellant refused to go, and then tried to get past Barrett and Mazariegos by pushing them out of the way. Barrett pushed appellant back against an office window. Appellant clenched her fist and forcibly punched Barrett in the left breast. Barrett tried to get appellant in a "head-reversal" to bring her to the ground and restrain her. Appellant bit Barrett's hand and spat in her face. Barrett and Mazariegos obtained assistance from other personnel and finally restrained appellant.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Appellant had been declared a ward of the juvenile court and was being detained in juvenile hall based upon an original and three supplemental petitions under Welfare and Institutions Code sections 602 and 777, alleging misdemeanor vandalism (§ 594) and violations of the provisions of various juvenile court orders.

On July 20, 1995, an amended fourth supplemental petition was filed alleging that appellant committed two counts of battery against a custodial officer in violation of section 243.1, and one count of petty theft. After a contested hearing on August 3, 1995, the juvenile court sustained count 2 of the petition, which alleged a felony battery against a custodial officer.[3] The juvenile court found not true the first count of battery upon a custodial officer (Mazariegos), and dismissed the third count alleging petty theft. At the dispositional hearing, appellant was ordered placed in a group residential home. This appeal followed.

## DISCUSSION

 The question before us is whether section 243.1, battery against a custodial officer, applies to a battery committed upon a probation counselor working in a juvenile hall. Specifically, we must decide whether a "probation counselor" comes within the definition of "custodial officer" as that term is used in section 243.1 to describe the victim, and as defined in section 831.

Section 243.1 states: "When a battery is committed against the person of a custodial officer as defined in Section 831 of the Penal Code, and the person committing the offense knows or reasonably should know that such victim is a custodial officer engaged in the performance of his duties, and such custodial officer is engaged in the performance of his duties, the offense shall be punished by imprisonment in the state prison." The term "custodial officer" is in turn defined in section 831, subdivision (a) as follows: "A custodial officer is a public officer, not a peace officer, employed by a law enforcement agency of a city or county who has the authority and responsibility for maintaining custody of prisoners and performs tasks related to the operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safekeeping or for the specific purpose of serving a sentence therein."

By its terms section 243.1 is specifically limited in scope to batteries committed against "custodial officers" as defined in section 831. Only if victim Barrett herself came under the specific definition of a "custodial officer" as set forth in that provision could the fourth supplemental petition be sustained under section 243.1. Our task then is to ascertain the intent of

---

[3]The victim of the battery charged in count 2 was Barrett. At the contested hearing, Barrett testified that she was employed at the juvenile hall detention facility as a "Probation Counselor 1, Temp," whose duties were to supervise and discipline the residents, attend to their basic daily needs, and take precautions against their escape. Mazariegos, her supervisor, was "lead counselor." There was no other evidence on the nature of Barrett's duties.

the Legislature as to the identity of the class of persons to be included as victims of the crime of battery against a "custodial officer." ▉ We must give the statutory provisions at issue a reasonable and common sense interpretation, consistent with the apparent purpose and intention of the Legislature. If possible, we will give significance to the plain meaning of every word, phrase, and sentence of a statute in pursuance of the legislative purpose, harmonizing the various parts of an enactment by considering each particular clause or section in the context of the statutory framework as a whole. In this process, we must take into account the context, object, and history of the legislation, as well as public policy and contemporaneous construction in our attempt to arrive at a construction that is practical rather than technical in nature. (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Conservatorship of Bryant* (1996) 45 Cal.App.4th 117, 120-123 [52 Cal.Rptr.2d 755]; *Schmidt* v. *Retirement Board* (1995) 37 Cal.App.4th 1204, 1210-1212 [44 Cal.Rptr.2d 297]; *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1487 [33 Cal.Rptr.2d 243]; *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-19 [194 Cal.Rptr. 722].)

The legislative history of the relevant statutes is convoluted. Section 831 was originally introduced in 1974 to create a new "non-peace-officer position of custodial officer" among persons responsible for maintaining custody of prisoners and operation of detention facilities in Los Angeles, and to grant these officers certain specified powers similar to those of a peace officer. (Stats. 1974, ch. 887, § 1, p. 1885.) Part of the purpose of this statute was to permit the newly created custodial officers to work in jails, thus freeing regular police officers for patrol duties. (Legis. Counsel's Dig., Assem. Bill No. 4463 (1973-1974 Reg. Sess.).) Nowhere in the legislative history of section 831 is there mention of juveniles, juvenile counselors or juvenile facilities.

Section 243.1 was originally introduced in 1975 as part of legislation to include "special officers" of the Los Angeles Department of Airports within the definition of peace officers for purposes of enhancing the punishment for batteries committed against such "special officers," and separately to provide similar increased punishment for a new crime of battery committed against "custodial officers." The apparent intent of this legislation was to continue the distinction between custodial officers and peace officers. (Legis. Counsel's Dig., Sen. Bill No. 931 (1975-1976 Reg. Sess.); Senate Judiciary Com. Rep. on Sen. Bill No. 931 (1975).) Again, the legislative history contains no mention of juveniles, juvenile detention facilities or juvenile counselors.

At various times, the Legislature amended these statutes or added others enhancing punishment for batteries committed against various additional

categories of victims. Thus, section 831 was broadened from its original limited focus on Los Angeles by amendment in 1980 and 1981 to include the present definition of "custodial officer," and to permit persons to perform the duties of a custodial officer under supervision, while completing their training. (Stats. 1980, ch. 1340, § 22, p. 4728; Stats. 1981, ch. 987, §§ 1-2, pp. 3825-3826; Enrolled Bill Rep. for Sen. Bill No. 412 (1981-1982 Reg. Sess.).) In 1980, the Legislature enacted section 831.5, creating an additional class of "custodial officers" employed by law enforcement agencies of counties having a population of 250,000 or less. (Stats. 1980, ch. 772, § 3, p. 2290.) In 1987, that statute was amended to apply to counties having a population of 425,000 or less. (Stats. 1987, ch. 234, § 1, p. 1213.) The legislative reports on section 831.5 refer to custodial officers as employed in "jails" in connection with the custody of "prisoners." There is no reference to "juveniles" or "juvenile detention facilities." (Enrolled Bill Rep. for Sen. Bill No. 1994 (1979-1980 Reg. Sess.); Senate Judiciary Com. Rep. on Sen. Bill No. 1994 (1980).)

Section 243 was originally enacted in 1872 to set forth the punishment for battery as defined in section 242. The statute was amended over the years to set out aggravated penalties for batteries against certain specifically enumerated victims, including peace officers, firefighters, and emergency medical technicians, among others. (Stats. 1981, ch. 678, § 2, p. 2476.) In 1982, section 243 was amended to include "custodial officers" among this category of battery victims. The legislative reports on this amendment refer to custodial officers as "public officers" with responsibility for maintaining custody of "prisoners." (Stats. 1982, ch. 1353, § 2, p. 5048; Enrolled Bill Rep. for Assem. Bill No. 3276 (1981-1982 Reg. Sess.).) A report of the Assembly Committee on Criminal Justice suggested the bill "should be amended to delete Section 243.1 of the Penal Code which is a special section referring only to custodial officers," apparently to avoid the resulting duplication in provisions setting out aggravated penalties for batteries against "custodial officers." (Assem. Crim. Justice Com. Rep. on Assem. Bill No. 3276 (1982).) This suggestion was evidently ignored, with the result that two separate statutes now provide somewhat different punishments for batteries against custodial officers.[4]

As a result of this sequential legislation enacted over a period of almost 10 years, the Legislature has created a maze of laws enhancing punishment for

[4]In an earlier Assembly Committee on Criminal Justice report on related legislation, a legislative staff member questioned the need for any additional provisions enhancing penalties for assault and battery on custodial officers or other persons working in jails or detention facilities, in view of the fact that section 4131.5 already provides for enhanced protection for such individuals. (Assem. Crim. Justice Com. Rep. on Assem. Bill No. 1997 (1980).)

different classes of victims, including "custodial officers," with the apparent purpose of giving added protection to such potential victims. Due to the Legislature's apparent inadvertence, we are now faced with an overlapping hodgepodge of statutes without any coherent definition of the classes of persons to be protected. For our present purposes, there is no mention in any of these statutes of the specific kinds of counselors and probation officers who perform the sorts of duties in juvenile detention facilities that other such officers fulfill in adult jails and prisons.[5]

 Turning from legislative history to the specific language of the statutes at issue, section 831 makes clear that although all custodial officers may be public officers, not all public officers are custodial officers. The statute specifies that only those public officers with authority and responsibility for maintaining custody of *prisoners* are custodial officers. For purposes of applying these controlling statutes to the offense charged in this case, the question is whether juvenile wards such as appellant may be considered "prisoners" when they are residing in a juvenile detention facility.

The Welfare and Institutions Code makes a clear distinction between juveniles and adults for punishment purposes. By statute, juveniles charged with crimes must be treated differently from adult criminals. Thus, under Welfare and Institutions Code section 203, "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

---

[5]Batteries are covered in numerous provisions of the Penal Code, distinguished by classes of victims. Section 243, subdivision (a) sets out the basic punishment for battery as a fine of not more than $2,000, or six months imprisonment in county jail, or both, without respect to type of victim. Section 243, subdivision (b) establishes higher misdemeanor penalties with punishment enhanced to up to one year in county jail for batteries "committed against the person of a peace officer, custodial officer, firefighter, emergency medical technician, mobile intensive care paramedic, lifeguard, process server, traffic officer, or animal control officer engaged in the performance of his or her duties, whether on or off duty . . . , or a physician or nurse engaged in rendering emergency medical care outside a hospital, clinic, or other health care facility . . . ." Section 243, subdivision (c) in turn establishes that a battery against any person from this same list may be treated alternatively as a misdemeanor or a felony with imprisonment of up to three years, when "an injury is inflicted on that victim . . . ." Section 243, subdivision (e) provides the same misdemeanor punishment as subdivision (b) for batteries "committed against a noncohabiting former spouse, fiancé, fiancée, or a person with whom the defendant currently has, or has previously had, a dating relationship . . . ." Section 243.2 provides identical punishment for batteries committed on school, park or public or private hospital property. The same punishment is provided in several other separate statutes for certain other specified classes of victims: public transit employees or passengers (§ 243.3); school employees (§ 243.6), and sports officials (§ 243.8). Section 243.7 establishes harsher penalties for batteries against jurors or alternates, including up to $5,000 fines and imprisonment of up to three years. Needless to say, these conflicting and overlapping statutory enumerations of battery victims have created unnecessary confusion.

Welfare and Institutions Code section 207.1 provides that "[n]o court, judge, referee, peace officer, or employee of a detention facility shall knowingly detain any minor in a jail or lockup," except under strictly limited conditions generally applicable to juveniles who are charged as adults or who present a serious security risk of harm to self or others. (Welf. & Inst. Code, § 207.1, subds. (a), (b), (d).) Welfare and Institutions Code section 207.1, subdivision (i)(1) defines "jail" to mean "any building that contains a locked facility administered by a law enforcement or governmental agency, the purpose of which is to detain *adults* who have been charged with violations of criminal law and are pending trial, or to hold convicted *adult* criminal offenders sentenced for less than one year." (Italics added.) Welfare and Institutions Code section 207.1, subdivision (i)(2) defines "lockup" as "any locked room or secure enclosure under the control of a sheriff or other peace officer which is primarily for the temporary confinement of *adults* upon arrest." (Italics added.)

Welfare and Institutions Code section 850 in turn specifies that the place of detention of juvenile wards in a county "shall be known as the 'juvenile hall' of the county." Welfare and Institutions Code section 851 states: "The juvenile hall shall not be in, or connected with, any *jail* or *prison,* and shall not be deemed to be nor be treated as a penal institution. It shall be conducted in all respects as nearly like a home as possible." (Italics added.)

We have discovered no cases addressing the applicability of section 243.1 to batteries committed on probation officers, counselors or other individuals employed to monitor, supervise or guard juvenile wards detained at juvenile halls. However, the discussions in the reported cases that have considered the status of juvenile detainees suggest that the word "prisoners" as used in section 831 refers only to persons incarcerated in adult penal institutions.

The facts in the case of *In re Eddie D.* (1991) 235 Cal.App.3d 417 [286 Cal.Rptr. 684] are very similar to those in this case. The juvenile defendant was involved in a fight with another ward while both were "serving time" at a juvenile hall. Two "group counselors" employed by the county probation department at the juvenile hall intervened to break up the fight. When they attempted to handcuff the juvenile defendant, he resisted, and it took several minutes to restrain and handcuff him. (*Id.* at p. 421.) A supplemental petition was filed alleging that the juvenile had "resisted, delayed or obstructed a public officer in the discharge or attempted discharge of her duties," in violation of section 148. (235 Cal.App.3d at p. 420.)[6]

On appeal from a juvenile court order sustaining the allegation and committing him to the California Youth Authority, the juvenile contended

---

[6]Section 148, subdivision (a) provides in pertinent part: "Every person who willfully resists, delays, or obstructs any *public officer, peace officer,* or an emergency medical

the evidence was insufficient to sustain the implied finding that the group counselor was a "public officer" for purposes of section 148. The Court of Appeal held that under sections 830, 830.5, subdivision (b) and Government Code section 82048, any counselor or other employee of a probation department having custodial responsibilities in an institution operated by a probation department, including a juvenile hall or detention facility, is both a public officer and a peace officer for purposes of section 148.[7] On this basis the Court of Appeal held as a matter of law that the "group counselor" was a peace officer for purposes of section 148, and affirmed the juvenile court order. (*In re Eddie D., supra*, 235 Cal.App.3d at pp. 421-424.)

In the course of its analysis, the *Eddie* court distinguished the concept of "custodial officer" as defined in section 831 from that of "peace officer" as defined in sections 830 and 830.5. The court pointed out that section 831 specifically states that "[a] custodial officer is a public officer, not a peace officer," and expressly limits its definition of custodial officers to persons with the "custody of prisoners" who are "serving a sentence." The *Eddie* court stated that this "language [is] more appropriate to a penal institution housing prisoners rather than to wards in a juvenile detention facility." (*In re Eddie D., supra*, 235 Cal.App.3d at p. 424.)

In *People* v. *Rackley* (1995) 33 Cal.App.4th 1659 [40 Cal.Rptr.2d 49], a juvenile defendant was charged with eight felonies, including murder, robbery and burglary. After he pleaded guilty to some of the felony offenses and was sentenced, he escaped while being transported from court back to juvenile hall. He was charged with felony escape under section 4532, subdivision (b). On appeal, he contended that he was wrongly prosecuted under the felony statute, and could only be prosecuted for misdemeanor

---

technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.)

[7] Section 830 provides in pertinent part: "Any person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer."

Section 830.5, subdivision (b) provides in pertinent part: "The following persons are peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment . . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) [A]ny superintendent, supervisor, or employee having custodial responsibilities in an institution operated by a probation department, or any transportation officer of a probation department."

Government Code section 82048 defines the term "public official" to mean "every member, officer, employee or consultant of a state or local government agency . . . ."

escape under Welfare and Institutions Code section 871, which applies to escapes from juvenile hall. The Court of Appeal agreed and reversed the conviction, holding that the felony statute applies only to escapes by adult prisoners incarcerated in adult penal institutions, and not to minors detained in juvenile hall. (33 Cal.App.4th at pp. 1661-1662, 1664, 1670.)

In response to the People's argument that section 4532, subdivision (b) applies generally to escapes from custody by any persons charged or convicted of felonies, such as the juvenile defendant in that case, the *Rackley* court held that the Legislature did not intend for section 4532 to apply to juveniles. Although "[t]he literal language of the statute is susceptible" to the People's interpretation, it "appears to ignore the use of the word 'prisoner,' as interpreted by Supreme Court precedent. Further, the legislative history of the statute as well as a review of other statutes making escape a crime in a variety of circumstances compel us to conclude that section 4532, subdivision (b) was intended to apply only to prisoners who have been incarcerated in an adult penal institution." (*People* v. *Rackley*, *supra*, 33 Cal.App.4th at pp. 1665-1666.)

From these cases, we must conclude that juvenile wards detained in juvenile hall are not subject to criminal statutes directed at "prisoners." We have examined the legislative history of sections 243.1 and 831, and have found nothing to indicate that the Legislature considered or intended including juvenile probation counselors within the definition of "custodial officers" for purposes of imposing felony punishment on the crime of battery against such persons. The Legislature simply did not address this issue in enacting and amending these provisions. There is nothing in the legislative history of sections 243.1 and 831 to contradict the conclusion that section 243.1 is directed only at batteries committed against custodial officers in *adult* penal institutions. (*People* v. *Rackley*, *supra*, 33 Cal.App.4th at pp. 1665-1666; *In re Eddie D.*, *supra*, 235 Cal.App.3d at p. 424.)

Indeed, the applicable statutes distinguishing between different kinds of public officers seem to compel this conclusion. Thus, under sections 830 and 830.5, any juvenile hall counselor is a "peace officer." (*In re Eddie D.*, *supra*, 235 Cal.App.3d at pp. 421-424.) However, section 831 specifically defines a custodial officer as "a public officer, *not* a peace officer." (Italics added.) By expressly excluding peace officers from the definition of a "custodial officer," section 831 appears to eliminate the possibility that a juvenile hall counselor could be considered such a custodial officer. Consequently, probation counselor Barrett might be a peace officer as well as a public officer, but could not be a "custodial officer" for purposes of section 243.1 and the offense charged in this case. (235 Cal.App.3d at p. 424.)

In sum, under current statutory and case law appellant was not a "prisoner." Therefore, the victim in this case was not a "custodial officer" under section 831. Under the facts of this case, it was error to charge appellant with battery on a custodial officer under section 243.1, and it was error for the juvenile court to sustain the allegations of the supplemental petition.[8] This matter must be reversed and remanded for further proceedings to determine the proper disposition.

We are mindful of the current realities of juvenile crime and of the difficulties and dangers inherent in maintaining custody of violent juveniles. There is frequently no difference in the seriousness of the crimes committed by juveniles and those committed by adults, and the supervision of minors in juvenile hall may be just as hazardous as the supervision of adult county jail inmates. As a matter of public policy, we agree with the People's assertion in their brief that supervisory and custodial personnel employed in juvenile halls are entitled to the same protection against criminal attack as that provided custodial officers in the context of prisons and county jails. Nevertheless, we are constrained by the express language of the applicable statutes to hold that, under current law, probation counselors and other supervisory personnel employed in juvenile detention facilities are not included within the definition of "custodial officers" for purposes of sections 243.1 and 831. It is the province of the Legislature and not the courts to enact statutory categories and definitions such as the ones at issue. Clearly, any change in current law must be addressed by the Legislature.

### DISPOSITION

The order and judgment appealed from are reversed, and the matter is remanded for further proceedings.

Phelan, P. J., and Corrigan, J., concurred.

---

[8]As seen, a probation officer employed to exercise custodial responsibilities in a juvenile detention facility is a peace officer under section 830.5, subdivision (b). (*In re Eddie D.*, *supra*, 235 Cal.App.3d at p. 424.) Section 243, subdivision (c) includes a "peace officer" along with a "custodial officer" in the list of victims as to whom felony punishment for batteries may be applied. Needless to say, the appellant in this case was not charged under section 243, subdivision (c), although the facts suggest that she could have been.