[No. C062665. Third Dist. Oct. 18, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JEREMY NOEL DOOLEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

**COUNSEL**

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BUTZ, J.**—A jury found defendant Jeremy Noel Dooley guilty of battery upon a custodial officer. (Pen. Code, § 243.1.)[1] A two strikes offender, he was sentenced to eight years in state prison.

Defendant appeals, arguing (1) there was insufficient evidence to support his conviction, (2) the trial court erred in failing to give supplemental instructions to the jury on the definition of the term "custodial officer," and (3) the court erred in failing to instruct on the lesser included offense of battery. We reject each of these contentions and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the day of the incident, defendant was in custody as a "civil committee" in Shasta County jail.[2] Civil committees are housed separately from the general inmate population and have a different classification than criminal inmates. Due to defendant's classification, he was confined to the medical ward of the jail. Nevertheless, defendant was required to follow all the same rules as other jail inmates, including the requirement that he wear an identification wristband at all times.

On April 17, 2009, Shasta County Correctional Officer John Westmoreland, who was in charge of the medical ward, noticed that defendant was not wearing his identification wristband. Westmoreland told defendant he needed to wear the wristband. Defendant replied that he was allergic to the wristband's metal clasp. The officer responded that since defendant did not have a doctor's note, he would still have to wear the wristband. Defendant complied with the order and put his wristband on.

Later in the day, when Officer Westmoreland returned defendant to his cell, defendant took off his wristband. When Westmoreland again advised defendant that he needed to wear the wristband, defendant responded that he did not

---

[1] Undesignated statutory references are to the Penal Code.

[2] Defendant was in custody because of a petition seeking to have him found to be a sexually violent predator. (Welf. & Inst. Code, § 6600 et seq.) The parties agreed, however, that the jury would not be told of this fact. Instead, the jury was read the following stipulation: "On or about April 18, 2009, defendant was lawfully in custody as a civil committee relating to another matter and was required to follow jail rules and procedures pertinent to civil committee[s]."

have to follow the rules. Since defendant was already in his cell and would remain there for the rest of the day, Westmoreland let the matter drop.

The next day, Officer Westmoreland noticed that defendant had items of contraband in his cell. Westmoreland ordered defendant out of his cell so he could conduct a search. When defendant reentered his cell after the search, Westmoreland again noticed that he was not wearing his wristband. Westmoreland told defendant several times that he needed to wear his wristband, but defendant ignored him. Westmoreland then asked whether defendant had heard his directions. Defendant said he had, but that he did not have to follow the rules. Westmoreland then decided to take defendant down to the sergeant's office to resolve the wristband issue, so he ordered defendant to turn around and put his hands on the wall, intending to place him in handcuffs.

When defendant refused to comply with the officer's commands, Officer Westmoreland reached for defendant's right hand. Defendant pulled away, shouting, "don't fuckin' touch me. I'm a civilian. I don't have to follow your rules." When Westmoreland reached for defendant's hand a second time, defendant knocked the officer's arm away and slapped him in the face.

A struggle ensued on defendant's bed, after which defendant ran out of his cell and down the hall. Officer Westmoreland gave chase and when he reached defendant in front of the nurse's station, defendant punched him in the chest three or four times. Westmoreland finally gained control over defendant and immobilized him until other officers arrived on the scene.

## DISCUSSION

### I. Sufficiency of Evidence

Defendant argues there was insufficient evidence to prove that Officer Westmoreland was a "custodial officer" for purposes of section 243.1 and, thus, his conviction for battery upon a custodial officer must be vacated.

On appeal "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578

[162 Cal.Rptr. 431, 606 P.2d 738].) Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom. (*In re James D.* (1981) 116 Cal.App.3d 810, 813 [172 Cal.Rptr. 321].)

Section 243.1 states: "When a battery is committed against the person of a *custodial officer as defined in Section 831 of the Penal Code*, and the person committing the offense knows or reasonably should know that the victim is a custodial officer engaged in the performance of his or her duties, and the custodial officer is engaged in the performance of his or her duties, the offense shall be punished by imprisonment in the state prison." (Italics added.)

■ "Under section 831, a custodial officer is (1) a public officer, not a peace officer; (2) employed by a law enforcement agency of a city or county; (3) who has the authority and responsibility for maintaining custody of prisoners and performing tasks related to the operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safekeeping or the specific purpose of serving a sentence." (*People v. Garcia* (1986) 178 Cal.App.3d 887, 894 [223 Cal.Rptr. 884] (*Garcia*).)

■ Officer Westmoreland clearly satisfied the first element. Under the California Constitution, " 'Public officer and employee' includes every officer and employee of the State, including the University of California, every county, city, city and county, district, and authority, including any department, division, bureau, board, commission, agency, or instrumentality of any of the foregoing." (Cal. Const., art. XX, § 3.) Since Westmoreland was an employee of the Shasta County Sheriff's Office, he was a "public officer."

Furthermore, Officer Westmoreland was not a "peace officer." Section 830 states, in relevant part, "no person other than those designated in this chapter is a peace officer." It is undisputed that Westmoreland did not fit within any of the definitions of peace officers listed in section 830 et seq. (*Garcia, supra,* 178 Cal.App.3d at pp. 894–896.)

Because Officer Westmoreland was employed by the Shasta County Sheriff's Office, he also satisfied the second element, i.e., employment by a law enforcement agency.

The last requirement is that the officer have "the authority and responsibility for maintaining custody of prisoners and performs tasks related to the

operation of a local detention facility used for the detention of persons usually pending arraignment or upon court order either for their own safe-keeping or for the specific purpose of serving a sentence therein." (§ 831, subd. (a).) This element "relates to the officer's tasks and responsibilities." (*Garcia, supra*, 178 Cal.App.3d at p. 896.) Officer Westmoreland was a correctional officer in a county jail. During the incident at issue, Westmoreland was in charge of the medical ward of the jail, where defendant was confined in a holding cell.

■ Based on the foregoing, a reasonable jury could find that Officer Westmoreland satisfied all three elements necessary to qualify him as a "custodial officer" within the meaning of section 831.

■ Defendant insists, however, that because he was a civil committee rather than a prisoner, Officer Westmoreland could not have been a "custodial officer" within the meaning of the statute. The argument lacks merit because, instead of focusing on the class of victims the statute seeks to protect, defendant focuses on his own status. As stated in *In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1217–1218 [57 Cal.Rptr.2d 851] (*Rochelle B.*), "the Legislature has created . . . laws enhancing punishment for different *classes of victims*, including 'custodial officers,' with the apparent purpose of giving *added protection to such potential victims*." (Italics added.)

Were we to accept defendant's suggestion that the classification of the *attacker* is dispositive, this legislative goal could be defeated. For example, suppose a visitor at the jail physically attacked Officer Westmoreland while he was escorting defendant to his cell. No one could seriously claim that because the visitor was not a "prisoner," he could not be found guilty of battery upon a custodial officer in the performance of his duties within the meaning of section 243.1. Likewise, regardless of the technical fine points of defendant's inmate status, there is no question Westmoreland was performing supervisory duties as a custodial officer in a detention facility when the attack occurred.

Defendant relies on *Rochelle B.* to argue that a person who is not a *criminal* detainee cannot be convicted under section 243.1. Specifically, he zeroes in on the appellate court's statement that "appellant was not a 'prisoner.' Therefore, the victim in this case was not a 'custodial officer'

under section 831." (*Rochelle B., supra*, 49 Cal.App.4th at p. 1222.) However, this quote is taken out of context and distorts the true holding of the case.

In *Rochelle B.*, the minor, a juvenile ward held in juvenile hall, was convicted under section 243.1 for attacking a juvenile probation counselor. (*Rochelle B., supra*, 49 Cal.App.4th at p. 1214.) The court addressed the issue of whether a probation counselor employed in a juvenile hall should be considered a "custodial officer" for purposes of section 243.1. (*Rochelle B.*, at p. 1215.)

In reaching its decision, the court in *Rochelle B.* sought to determine whether "juvenile wards" are considered "prisoners" when held in a juvenile facility. The court concluded that because juvenile halls were not penal institutions and the counselor did not have authority or responsibility for maintaining "prisoners," she was not a "custodial officer" within the meaning of section 243.1. (*Rochelle B., supra*, 49 Cal.App.4th at pp. 1221, 1222.)

There are two important distinctions between *Rochelle B.* and this case. First, in *Rochelle B.*, the minor was held at a juvenile detention facility, not an adult penal institution. The *Rochelle B.* court noted that while section 831 does not refer to " 'juveniles' or 'juvenile detention facilities,' " both the statute and its legislative history make reference to jails and prisoners. (*Rochelle B., supra*, 49 Cal.App.4th at p. 1217.) Here, defendant was in custody in a *jail* which held *prisoners*.

Second, the victim in *Rochelle B.* was a juvenile probation counselor. There was no evidence that her responsibilities included "maintaining custody of prisoners," as section 831 requires. By contrast, Officer Westmoreland was employed as a correctional officer at a county jail and his duties included "maintaining custody of prisoners and perform[ing] tasks related to the operation of a local detention facility . . . ." (§ 831, subd. (a).)

For all these reasons, we reject defendant's challenge to the jury's implied finding that Officer Westmoreland was a "custodial officer" within the meaning of sections 243.1 and 831.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 322.

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 19, 2011, S188384.