[No. G028532. Fourth Dist., Div. Three. May 30, 2002.]

In re ANTONIO F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO F., Defendant and Appellant.

**COUNSEL**

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Rhonda L. Cartwright-Ladendorf, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, J.**—Antonio F. was committed to Los Pinos Conservation Camp, an Orange County juvenile facility, in March of 2000. Three months later, he and 11 other wards from Los Pinos were taken by probation counselors on a working field trip to the Kidseum in Santa Ana, where they painted, dusted, vacuumed and performed other tasks. Antonio asked to use the bathroom and was escorted to a door marked "Mens Room." The

counselor assigned to him, Rhonda Hembree, stood outside the door for about five minutes, then opened it to look for him. She found the door did not lead directly into the men's room, but into a hallway to the men's room. She found there was a door in the hallway that led to the parking lot. But she did not find Antonio. Antonio was nowhere to be found, did not make the bus back to Los Pinos, and never returned to Los Pinos.

Antonio's untimely evanescence was tried in juvenile court as a violation of Welfare and Institutions Code section 871.[1] That section provides that "[a]ny person under the custody of a probation officer or any peace officer in a county juvenile hall, or committed to a county juvenile ranch, camp, or forestry camp, or any person being transported to or from a county juvenile hall, ranch, camp or forestry camp, who escapes or attempts to escape *from that place or during transportation to or from that place*, is guilty of a misdemeanor . . . ." (*Ibid.*, italics added.) ▉ Despite the fact Antonio did not escape from any of the enumerated facilities, nor while being transported to or from one, the juvenile court found he had violated section 871, on the theory "his having escaped from [the probation officers'] custody while on that field trip is, in fact, escaping from the place where he was committed to." The Attorney General defends this finding on the basis that the only elements of the offense are that the minor was "(1) under the custody of a probation officer or peace officer, and (2) either in a county juvenile hall or committed to a county juvenile home ranch camp or forestry camp and escape[d] from that place." (Underscoring in original.)

Unfortunately, the Attorney General, having said that, reads the phrase "escape[d] from that place" out of the statute. He contends that once the minor was committed to the county facility, his escape from anywhere would constitute a violation of the statute. His position is that, "Commitment to Los Pinos is not the tangible building or grounds; it is the act of serving the time in the custody of a county facility."

We do not see it that way. It seems to us that if this were the intent of the Legislature, there would be no need to include provisions for wards who escape while being transported to or from a juvenile facility. Under the Attorney General's rationale, a ward would be covered no matter where he actually escaped, so there would be no need to include sections covering transit escapes. But those clauses are in the statute, and we are not given to interpreting statutes so as to render parts of them surplusage (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 216 [266 Cal.Rptr. 638, 786 P.2d 365]).

Nor does the Attorney General's approach take into account the history of interpretation of the statute. Ten years ago, a juvenile named Thanh Q. came

---

[1] All statutory references are to the Welfare and Institutions Code.

to this court with an argument indistinguishable from the one before us. He contended he could not be convicted of violating section 871 because that section covered only escapes from county institutions, and since he had escaped from his home during an overnight furlough, his actions did not come within the proscription of the statute. We concluded, through clenched teeth, that he had found a lacuna in the statute. We held that, "[a]lthough it seems clear Thanh has violated his furlough release agreement, section 871 does not address that violation." (*In re Thanh Q.* (1992) 2 Cal.App.4th 1386, 1390 [4 Cal.Rptr.2d 19].) We reversed the judgment against Thanh and suggested that, "[t]he Legislature is the proper body to determine which placements fall under section 871." (*Ibid.*)

The Legislature did. In the next legislative session, it amended section 871 to include a new subdivision (c), which made punishable the willful failure to return from a furlough or temporary release. That plugged the leak in the statute which we had identified in *Thanh Q.*, but left others.

In 1996, another Court of Appeal, confronted the issue of whether section 871 applied to a "privately run" "group home facility" which is "funded by the county" as "an alternative to the Juvenile Hall Detention Facility" and located next door to it. (*In re Jason G.* (1996) 46 Cal.App.4th 1017, 1019, 1020 [54 Cal.Rptr.2d 255].) The court held the section did not apply to such a facility, again deferring to the legislative prerogative of deciding whether the section should be so broad. The Legislature declined to change it: no amendment was passed. Apparently, they did not wish the statute to apply to such facilities.

It is difficult to imagine two cases which could more clearly demonstrate the proper functioning of judicial review of the legislative function. In both instances, the courts exercised restraint, pointed out a perceived problem, and allowed the Legislature to decide how and whether to correct it. In one instance, the Legislature chose to change the law; in the other, it did not.

This makes our role in the present case quite clear. There is a possible flaw in the statute. It would cover Antonio's escape from the facility to which he was committed, because Los Pinos falls within the statutory description. It would cover Antonio's escape from the bus on the way to or from the Kidseum because the statute covers escapes during transit "to or from" a county facility. But nothing in the statute describes an escape from a private facility during a field trip, the situation we have here.

 We are mindful that "[t]he crime of escape as defined in section 871 is entirely statutory and . . . that section must be strictly construed. [Citation.]" (*In re Steven E.* (1991) 229 Cal.App.3d 1162, 1166 [280 Cal.Rptr.

540].) ██ There can be little doubt that strict construction of the statute does not cover escape from a privately run museum for children, no matter how commendable field trips to such institutions might seem to us, and no matter how much we might want to encourage such trips.

A good argument can be made that there is no reason why the consequences for Antonio should be different depending upon whether he crawls out a window of the bus and runs away or saunters out an unguarded door at the Kidseum while no one is looking. But such arguments can always be made when the Legislature's motivation is unclear. There probably appeared no reason in *Jason G.* why it should be a crime to walk away from the juvenile hall, but not to walk away from the surrogate juvenile hall next door the county had contracted to serve as a backup. Yet the Legislature adopted the *Jason G.* court's conclusion section 871 did not apply to the building next door; apparently they saw such a reason.

The point is that our deference to the Legislature is based in part upon the fact they are closer to the problems than we are. In this case, they presumably discussed section 871 with constituents much more familiar with the day-to-day operation of juvenile facilities than we can ever become. These discussions could well have convinced them a distinction should be drawn, and we should be loath to read that distinction out of the statute unless we are firmly convinced it was not intended.

The mere fact we do not see the wisdom of the statute is—strictly speaking—irrelevant. As written, the statute makes a distinction, and deciding whether that distinction is a good idea is the role of the Legislature; ours is simply to determine whether they *meant* to make such a distinction.

Here we cannot confidently say they did not. It may be the Legislature chose to limit this statute only to transportation to and from court. It may be that the experience of the probation department was that wards who walked away from field trips were merely taking advantage of an opportunity and were more amenable to "in-house" treatment than wards who escaped during transport. Or there may be another reason or a host of such reasons the statute was written as it is.

If, in fact, no such distinction was intended, it is a simple matter for the Legislature to plug this hole. And if it *was* intended, they can react to our decision here as they reacted to *In re Jason G.*: they can nod, congratulate us on our forebearance and move on to the frying of bigger fish.

We therefore hold that section 871—as presently written—does not apply to a juvenile committed to a county juvenile facility who escapes from a site

to which he has been taken for a "working field trip." We are convinced by the reasoning of *Thanh Q.* and *Jason G.* that no other conclusion is possible.

One of the things which compels us to this conclusion is that section 1768.7, which criminalizes escape from the California Youth Authority, is worded in such a way as to cover our situation had Antonio been committed to the Youth Authority. ■ " ' " " 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " ' [Citations.]" (*Williams v. County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1332 [275 Cal.Rptr. 302].) If the Legislature does wish to make decampments such as the one presently before us escapes, it might want to compare section 871 to section 1768.7 as a way of assuring itself it has covered all the eventualities it wishes to cover.

The judgment is reversed.

Rylaarsdam, Acting P. J., and Moore, J., concurred.